# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TIMOTHY OZINGA, et al.,

       Plaintiffs,

v.

THE UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, et al.,

       Defendants.

No. 13 C 3292

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ozinga Brothers, Inc., along with its owners and senior managers (collectively, "Ozinga"), brought this case against defendants United States Department of Health and Human Services, United States Department of Treasury, United States Department of Labor, Kathleen Sebelius (Secretary of the Department of Health and Human Services), Jacob L. Lew (Secretary of the United States Department of Treasury), and Seth D. Harris (Secretary of the United States Department of Labor) (collectively, "defendants") challenging certain aspects of the Patient Protection and Affordable Care Act of 2010's contraception mandate. This Court awarded Ozinga preliminary and then permanent injunctive relief. The Seventh Circuit reversed the permanent injunction after finding the case moot, but made clear that Ozinga is still a prevailing party entitled to appropriate attorney's

fees. Currently before the Court is Ozinga's petition for attorney's fees. R. 73.[1] For the following reasons, the Court awards Ozinga's counsel $89,958.75 in fees.

## Background

In this lawsuit, Ozinga sought declaratory and injunctive relief barring enforcement of the Affordable Care Act's contraception mandate against Ozinga because it violated Ozinga's owners' and managers' religious tenets. In July 2013, this Court granted Ozinga's motion for a preliminary injunction barring enforcement of the mandate against Ozinga. R. 23; R. 25.

In August 2013, the Court stayed further proceedings over Ozinga's objection pending the Seventh Circuit's final resolution of two appeals in which motions panels had held (in 2-1 decisions) that for-profit, closely-held plaintiff companies (*i.e.*, companies similarly situated to Ozinga) were likely to prevail on their claims that the contraception mandate substantially burdened their religious rights. *See* R. 29; *Korte v. Sebelius*, 528 F. App'x 583 (7th Cir. 2012) (*Korte I*); *Grote v. Sebelius*, 708 F.3d 850 (7th Cir. 2013). In November 2013, the Seventh Circuit resolved both the *Korte* and *Grote* appeals in a single opinion, holding that "the balance of harms favors protecting the religious-liberty rights of the plaintiffs," and reversing and remanding "with instructions to enter preliminary injunctions barring enforcement of the mandate against them." *Korte v. Sebelius*, 735 F.3d 654, 659 (7th Cir. 2013) (*Korte II*).

---

[1]     Although Ozinga titles his petition "Plaintiffs' Petition for Attorney's Fees, Costs and Expenses," nowhere does Ozinga itemize or seek costs or expenses. *See* R. 73.

In 2014, the Supreme Court confirmed in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), that the contraception mandate as applied to closely-held, private firms whose owners objected on religious grounds substantially burdened those owners' (and by extension their companies') exercise of religion. *Id.* at 2768-79. Following the Supreme Court's decision in *Hobby Lobby*, the government amended the applicable regulations in July 2015 to extend to closely-held, private firms an accommodation previously granted to certain religious employers. 80 Fed. Reg. 41,318, at 41,322-328 (July 14, 2015).

This Court subsequently lifted the stay in this case, and the parties introduced competing proposals for an amended form of permanent relief in the wake of *Hobby Lobby*. This Court adopted defendants' proposed permanent injunction (R. 53), and Ozinga appealed.

On appeal, the Seventh Circuit held that "the revision of the regulatory framework in July 2015 rendered moot Ozinga's challenge to the contraception mandate," and reversed the permanent injunction. *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017). The Seventh Circuit clarified, however, that:

> the revised regulations do not alter Ozinga's status as a prevailing party in this case. The change occurred after Ozinga sought and obtained preliminary injunctive relief and after *Hobby Lobby* validated the legal theory that Ozinga and other employers had pursued in this and similar suits. Consequently, nothing prevents the district court from entering an appropriate award of fees to Ozinga pursuant to 42 U.S.C. § 1988(b).

*Id.* at 735-36.

## Legal Standard

The Civil Rights Attorney's Fees Awards Act of 1976 provides that a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee" in suits brought under certain federal civil rights statutes, including 42 U.S.C. §§ 1983, 1985, and 1986. 42 U.S.C. § 1988(b). "[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The Seventh Circuit has already found (*Ozinga*, 855 F.3d at 735)—and both parties agree—that Ozinga is a prevailing party in this case.

"[I]n view of [its] superior understanding of the litigation," this Court has considerable "discretion in determining the amount of a fee award." *Hensley*, 461 U.S. at 437. The Court must "'provide a reasonably specific explanation for all aspects of a fee determination,'" but its explanation "need not be lengthy." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 651 (7th Cir. 2011) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010)).

The "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This calculation is commonly known as the "lodestar." *E.g.*, *Pickett*, 664 F.3d at 639. "[T]here is a strong presumption that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554. That presumption can be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in

determining a fee." *Id.* "The party seeking an award of fees" has the initial burden to "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.

**Analysis**

Ozinga's fee petition seeks: (1) $108,253.69 in fees for attorney Kevin E. White (the primary litigator in this case), comprised of 303.87 hours at a rate of $375 per hour; and (2) $43,524.25 in fees for attorney Andy Norman ("Special Fee Counsel" (R. 73 at 1)), comprised of 83.3 hours at a rate of $550 per hour. R. 82-1 at 1. These requested amounts take into account a 5% reduction from both counsel's lodestar "[a]s a showing of good faith." R. 73 at 1.

The Court first addresses the reasonableness of the hourly rates claimed and then the reasonableness of the hours totals, keeping in mind the "strong presumption that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554.

## A. Hourly Rates

The hourly rate component of the lodestar "must be based on the market rate for the attorney's work." *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). "The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* "[O]nce an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Id.* at 659-60.

Defendants do not challenge the reasonableness of White's and Norman's hourly rates. And the Court finds those rates adequately supported and reasonable. White has 34 years of attorney experience and requests an hourly rate of $375. R. 73 at 24; R. 73-1 at 1; R. 73-2. Ozinga sets forth numerous examples of courts in this district awarding comparable or higher rates for similarly experienced or less experienced attorneys. R. 73 at 21-22 (collecting cases). Evidence like this of "rates awarded to similarly experienced . . . attorneys [from the same city] in other civil-rights cases in the district" is considered "next-best evidence" in the absence of "evidence of the attorneys' actual market rates." *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014).

Norman, the special fee counsel, has 37 years of attorney experience and requests an hourly rate of $550. R. 73 at 24; R. 73-1 at 1; R. 73-2. Ozinga points to one prior decision awarding Norman that rate, and other decisions awarding him comparable rates. R. 73 at 28 (collecting cases); *see also, e.g.*, *Pickett*, 664 F.3d at 647 ("a previous attorneys' fee award is useful for establishing a reasonable market rate for similar work"). Especially in light of the lack of any challenge by defendants, the Court finds these requested rates reasonable and awards them.[2]

---

[2] The Laffey Matrix further supports these requested rates. The Laffey Matrix is a table of hourly rates prepared by the United States Attorney's Office in the District of Columbia for attorneys in the Washington, D.C. area. The Seventh Circuit has not explicitly endorsed the use of the Laffey Matrix, and has "expressed some skepticism about applying the *Laffey* Matrix outside of Washington, D.C." *Montanez*, 755 F.3d at 554. Nevertheless, the Seventh Circuit has "left it to trial judges to exercise their discretion in evaluating [the Laffey Matrix's] usefulness in any particular case," *id.*, and courts in this district have accepted it as evidence of a reasonable hourly rate. *See Hadnott v. City of Chicago*, 2010 WL 1499473, at *7

### B. Hours Worked

The hours worked component of the lodestar excludes hours "not reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434. "[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). The Court also may reduce the hours calculation "[w]here the documentation of hours is inadequate." *Hensley*, 461 U.S. at 433.

Ozinga has attached to its fee petition and reply brief detailed attorney time records showing the hours worked by White and Norman. R. 73-1 at 5-41; R. 73-2 at 6-20; R. 82-2 at 1-2; R. 82-3 at 1-5; R. 82-4 at 1-3. Ozinga requests a total of $76,398.75 for 203.75 hours on the underlying litigation and $75,379.19 for 183.42 hours on the fee litigation. *See* R. 74 at 1; R. 82-1. Defendants do not challenge the adequacy of the documentation for any of counsel's claimed hours. But defendants do challenges the hours totals as "excessive, redundant, or otherwise unnecessary" (*Hensley*, 461 U.S. at 433) for both the underlying litigation and the fees-on-fees request.

---

(N.D. Ill. Apr. 12, 2010) (citing cases and concluding "that the Laffey Matrix is 'satisfactory evidence' of the prevailing rate, so that the burden shifts to opposing counsel to show why a lower rate is essential"). The Laffey Matrix reveals that an attorney with 20-plus years of complex litigation experience is entitled to an hourly rate of $520—far more than White seeks and close to the amount that Norman seeks (with Norman having considerably more experience than 20 years). R. 73 at 24.

### 1. Underlying Litigation

**Background Research and Complaint.** Defendants first take issue with the 76.2 hours White spent from November 20, 2012 through filing the complaint on May 1, 2013, including 58.3 hours drafting the complaint and 17.9 hours on background research and investigation. Defendants point out that at the time this case was filed, 29 similar cases were pending across the country, and White consulted with counsel who had already filed a similar case in this district. R. 74-1 ¶¶ 3, 4. Motions panels in *Korte I* and *Grote* also had already granted preliminary injunctions pending appeal at the time this case was filed. *Korte I*, 528 F. App'x 583; *Grote*, 708 F.3d 850. Defendants therefore say White could have and should have been more efficient. Defendants request that the Court reduce the award for this phase of the case to no more than 30 hours.

As Ozinga points out, defendants' argument ignores the larger national backdrop of vigorous opposition by defendants to cases like Ozinga's. The Court agrees with Ozinga that White should not be penalized now in hindsight for time spent in 2012 and 2013 trying to anticipate how best to litigate the case, including how best to draft the complaint, in the midst of this rapidly evolving legal landscape. Although the motions panels in *Korte I* and *Grote* had come out in plaintiffs' favor, these were 2-1 preliminary decisions that gave the plaintiffs in those cases and Ozinga no assurance of victory on the merits. *Korte I*, 528 F. App'x 583; *Grote*, 708 F.3d 850. Indeed, defendants themselves in their July 13, 2013 motion to stay this case described the questions at issue as "largely novel," and

noted that "courts around the country that have thus far confronted these issues in similar cases have reached contradictory results." R. 17 at 4. It took years for many of these cases to be ultimately resolved. *See* R. 82 at 7.

As Ozinga further points out, White should not be penalized for being thorough and careful with his work and for being prepared to pursue the case zealously. As a district court in Minnesota reasoned in a similar case when declining to reduce number of hours counsel spent on efforts including "prepar[ing] a strong complaint" and "appris[ing] themselves of the relevant case law": "[t]he plaintiffs . . . could not know how the Eighth Circuit would rule on its pending cases, or how the United States Supreme Court would rule in *Hobby Lobby*. The plaintiffs' counsel would have done their clients a disservice by being unprepared to move forward with the litigation if the appeals were resolved differently." *Hall v. Sebelius*, 2016 WL 424965, at *6 (D. Minn. Feb. 3, 2016). Like the *Hall* court, this Court awards White his lodestar for background research and complaint drafting.

**Preliminary Injunction Motion.** Defendants also say White should not be fully compensated for the 58.3 hours spent researching and drafting Ozinga's motion for a preliminary injunction (accompanied by a 78-paragraph supporting declaration by the individual Ozinga plaintiffs (R. 19-2)) because defendants did not oppose the injunction. Although defendants acknowledge that White did not know about the lack of opposition when he began working on the motion, defendants say that he should have known that the government had already consented to injunctions in six cases, and could have asked for defendants' position at any time.

Defendants therefore say White should be compensated for no more than two of the 58.3 hours spent on the motion.

As Ozinga points out, this argument "is premised on the erroneous assumption that the parties could have somehow entered into an agreed injunction order with no motion for injunction"—or with a very limited motion—"on file." R. 82 at 10. To the contrary, "plaintiffs must carry the burden of persuasion with respect to the four prerequisites of a preliminary injunction." *Cox v. City of Chicago*, 868 F.2d 217, 219 (7th Cir. 1989). And a plaintiff's filings must enable the Court to make the requisite, specific findings. *See Chathas v. Local 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 512 (7th Cir. 2000) ("[t]he requirements for a valid injunction are found in Rule 65(d) of the Federal Rules of Civil Procedure, which provides, so far as pertinent here, that 'every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.'"). Accordingly, Ozinga needed to prepare and support its request for a preliminary injunction regardless of whether defendants opposed it.

This is not a situation like in *Taggert-Jeffries v. Astrue*, 2011 WL 304591 (E.D. Mo. Jan. 28, 2011), a case cited by defendants, where filing "a brief in support of the complaint" was wholly unnecessary because the plaintiff did not seek "judicial determination for her eligibility for benefits." *Id.* at *2. Nor is this a situation where defendants could have or would have given Ozinga everything it wanted and White

continued to rack up bills anyway. *Compare Spegon*, 175 F.3d at 552-53 & n.4 (case relied on by defendants reducing fees where claim might have been easily resolved without litigation if plaintiff's counsel had contacted the defendant before suing). Thus, the hours spent researching and drafting the preliminary injunction motion are reasonable and recoverable.

**Post-Permanent Injunction.** Defendants next argue that White is not entitled to fees for most of his work after the government consented to a permanent injunction on May 13, 2015. Specifically, they claim that White should be compensated for only 1.5 of the 24.6 hours spent litigating the scope of the permanent injunction (where the Court adopted defendants' proposal), filing a motion for a settlement conference that was denied, filing a notice of supplemental authority, and filing a notice of appeal. Defendants say that plaintiffs should not be compensated for these unsuccessful efforts. In support, however, defendants cite cases where courts declined to award fees for an unsuccessful and distinct *claim*. *See Hensley*, 461 U.S. at 434-35 (fees should not be awarded where plaintiff is successful on one claim and not on another if the claims are "distinctly different" from one other, "based on different facts and legal theories"); *West v. Matthews Int'l Corp.*, 2011 WL 3904100, at *5 (E.D. Mo. Sept. 6, 2011) (deducting .3 hours "specifically described as having been expended on the issue of punitive damages" where "jury . . . ruled against plaintiff on his claim for punitive damages").

The Supreme Court and Seventh Circuit have made clear that plaintiff's counsel should not be denied full compensation merely because they did not succeed

on an argument in support of a claim or lost an interim ruling, as long as they ultimately succeeded. *E.g.*, *Hensley*, 461 U.S. at 435 ("the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit"); *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988) ("a losing argument in support of a successful claim for relief is fully compensable time"); *see also Urban v. United States*, 2006 WL 2037354, at *4 (N.D. Ill. July 14, 2006) ("When plaintiffs attain success, courts should not decline to award fees to the plaintiffs' attorneys solely because certain zealous advocacy that was appropriately provided their clients did not contribute directly to that success.").

Nor does the fact that the Seventh Circuit ultimately dismissed Ozinga's appeal as moot change this Court's analysis. The Seventh Circuit in *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307 (7th Cir. 1996), rejected an argument that "because [the Seventh Circuit] dismissed [an] appeal as premature, the plaintiffs had not been 'successful' and attorney's fees were therefore unwarranted." *Id.* at 1314. The *Rockford* court explained that "[a] court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable," and particularly whether each decision was reasonable "at the time it was made." *Id.*

The Seventh Circuit made clear in its ruling on appeal that Ozinga is a successful, prevailing party entitled to "an appropriate award of fees." *Ozinga*, 855 F.3d at 736. The Court finds the hours White spent arguing for a different form of permanent injunction and grappling with the relevant case law, seeking a

settlement conference to resolve the litigation, filing a notice of supplemental authority, and filing a notice of appeal to have been reasonable at the time and recoverable. *See Rockford*, 90 F.3d at 1314.

**Other Tasks.** Defendants also take issue with compensating White for a number of discrete tasks that defendants claim were unnecessary or unrelated to the litigation. *First*, defendants say the 6.3 hours White spent drafting a sur-response to defendants' motion to stay (R. 26) is excessive because that filing was only seven pages long and summarized three decisions defendants had already identified, and because defendants ultimately succeeded on their motion to stay. But again, "[p]laintiffs are not to be denied full attorneys' fees merely because they lost some interim rulings en route to ultimate success." *Urban*, 2006 WL 2037354, at *4. Nor does Court find 6.3 hours to be a an unreasonable amount of time to draft a seven-page filing that was quite detailed and cited a number of cases beyond the three defendants mention. *See* R. 26.

*Second*, defendants say White should not be compensated for the 13.8 hours spent drafting a motion to lift the stay in November 2013 because that motion was never filed. But as Ozinga explains, drafting that motion made sense at the time White drafted it because the Seventh Circuit had just issued its decisions in the *Korte* and *Grote* cases, based on which this Court had stayed the case. *See Korte II*, 735 F.3d 654. Ozinga subsequently decided not to file the motion because defendants gave notice that they intended to file a petition for certiorari in the

Supreme Court, *see Burwell v. Korte*, 134 S. Ct. 2903 (2014) (denying certiorari), and Ozinga reasoned that this Court was therefore unlikely to lift the stay.

This is a far cry from the situation in the cases cited by defendants. In *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*, 2008 WL 728897 (N.D. Ill. Mar. 18, 2008), the court disallowed 0.6 hours preparing a motion for default that was never filed because it was commenced after the answer was filed, suggesting that the work was unnecessary. *Id.* at *5. And in *Divane v. Mitchell Sec. Sys. Inc.*, 2008 WL 938381 (N.D. Ill. Apr. 7, 2008), the court disallowed 4.5 hours spent on a summary judgment motion that plaintiffs gave no explanation for not filing. *Id.* at *2. By contrast, Ozinga has a sound explanation for not filing the stay motion.

*Third*, defendants object to the 10.9 hours White spent on "coverage issues" and "carrier issues" as unrelated to the litigation. As Ozinga explains, however, these were discussions with Ozinga's insurance carriers about the form of injunction that would achieve the outcome Ozinga desired of discontinuing coverage that violated its owners' religious beliefs. R. 82 at 18-19. The Court finds these discussions sufficiently related to the litigation to be compensable.

**Comparable Cases.** Finally, defendants point out that in 14 of 17 for-profit contraception coverage cases like Ozinga's in which the government consented to an injunction and the case was subsequently stayed, plaintiffs' counsel spent significantly fewer hours than White on the underlying case. R. 74-1 ¶¶ 11-12. Defendants cite the Seventh Circuit's instruction in *Bonner v. Coughlin*, 657 F.2d

931 (7th Cir. 1981), that "[i]n determining a fee award, the court should consider the number of hours ordinarily necessary competently to prepare comparable cases." *Id.* at 934. But the *Bonner* court merely noted this as a relevant consideration; it did not hold that courts should make an arbitrary cut to the lodestar based on numbers of hours billed in comparable cases. Indeed, the Seventh Circuit has since made clear that courts may not simply "cut [the fee request] down by an arbitrary percentage because it seem[s] excessive to the court." *Rockford*, 90 F.3d at 1314. Nor do defendants make any specific request for a reduction in fees based on this argument.

Moreover, comparability is inherently fact-specific. As Ozinga explains, a number of the cases defendants proffer were filed later than this one and arguably in more favorable jurisdictions for plaintiffs. R. 82 at 16. Ozinga further emphasizes, and defendants acknowledge (R. 74 at 14 n.9), that the time spent by plaintiffs' attorneys in the three of the 17 cases was comparable to White's time in this case.

White has already agreed to a five percent reduction from the lodestar— which is presumed reasonable—in a showing of good faith, and the Court does not find a further reduction appropriate. The Court therefore awards White his full requested amount of $76,398.75 in fees for the underlying litigation.

### 2.  Fees-on-Fees

Defendants do not challenge Ozinga's counsel's entitlement to some amount of fees-on-fees. And for good reason. It is well-established that a prevailing plaintiff

in a civil rights case may recover fees-on-fees. *E.g.*, *Ustrak v. Fairman*, 851 F.2d 983, 987-90 (7th Cir. 1988).

Defendants instead object to the number of hours expended on fee-related litigation and the corresponding amount of the fees-on-fees request. As they point out, White and Norman seek nearly the same amount of fees-on-fees as White does for the underlying litigation: $76,398.75 for 203.75 hours worked on the underlying litigation and $75,379.19 for 183.42 hours worked on the fee litigation (accounting for Norman's higher rate).

The parties raise a threshold legal issue as to whether the ratio of hours spent on fees and hours spent on the underlying litigation (here almost exactly one-to-one) should be taken into consideration when determining a proper fees-on-fees award. The Seventh Circuit has answered this question in the affirmative. In *Ustrak*, the Seventh Circuit reversed a fees-on-fees award for which "[f]or every hour spent litigating the merits the plaintiff's attorney's devoted almost 15 minutes to preparing a petition requesting fees for that hour." *Id.* at 987-88. The Seventh Circuit "disallow[ed] two-thirds of the lawyer and student hours allowed for the preparation of the fee petitions," explaining that "[t]he allowance [wa]s still a generous one." *Id.* at 988. It explained that the situation "reinforc[ed] [its] impression that lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue," which it characterized as "the tail wagging the dog, and with a vengeance." *Id.* at 987-88.

Ozinga claims the Seventh Circuit did not mean what it said in *Ustrak* and attempts to distinguish that case. But the Seventh Circuit reaffirmed its holding in *Ustrak* eleven years later in *Spegon*, a case Ozinga does not mention in its fees-on-fees discussion. The Seventh Circuit in *Spegon* addressed a situation like this one where counsel "spent approximately the same number of hours preparing the fee petitions as he requested in pursuing the merits of the case." 175 F.3d at 554. The court explained that "[i]f we considered the ratio of fifteen minutes worked on the fee petition for every hour worked on the merits to be 'excessive' in *Ustrak,* we must agree with the district court that it is patently unreasonable for [lead counsel] . . . to expend the same number of hours, or almost as many, on Spegon's fee petition as he expended on the merits of Spegon's case." *Id.* The *Spegon* court affirmed the district court's decision to reduce the fees-on-fees award from 9.2 hours to 1.6 hours. *Id.* at 554 & 551 n.2.[3]

---

[3] Contrary to what Ozinga claims, the Seventh Circuit did not "effectively preclude[ ] . . . a limitation of fees on fees by comparison to the merits portion of the case" (R. 82 at 23) in *BCS Servs., Inc. v. BG Investments, Inc.*, 728 F.3d 633 (7th Cir. 2013). Rather, the *BCS* court rejected "the argument that the fee award was excessive because it was almost twice the *damages* awarded the plaintiffs at trial." *Id.* at 642 (emphasis added). In that context, the court explained that "[a]ttorney fee shifting, as under RICO, is intended to facilitate suit by victims of unlawful behavior, . . . and awarding legal fees reasonably incurred *ex ante* even if excessive-seeming *ex post* (which is to say with the wisdom of hindsight) is necessary to achieve that objective." *Id.* The *BCS* court did not address fees-on-fees or the appropriate relationship between those fees and fees for the underlying litigation.

Ozinga also points to the Seventh Circuit's opinion in *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085 (7th Cir. 1990), affirming a fees-on-fees award of 99.25 hours. *Id.* at 1109. But Ozinga fails to mention that the Seventh Circuit also affirmed an award of 1,339.8 hours of fees for the underlying litigation, *see id.*, making the fees-on-fees award a reasonably small percentage of the total.

Numerous courts in this district have subsequently cited *Spegon* and *Ustrak* for the basic proposition that "[w]here the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition." *Farmer v. DirectSat USA*, 2015 WL 13310280, at *4 (N.D. Ill. Sept. 24, 2015); *Mays v. Springborn*, 2014 WL 12730575, at *7 (C.D. Ill. Nov. 6, 2014) (same); *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 992 (N.D. Ill. 2012) (same).

This Court therefore agrees with defendants that a significant reduction is called for in the calculation of fees-on-fees. In particular, Court agrees with defendants that the 35.94 hours White and Norman spent compiling billing records is excessive. As defendants point out, "it is hard to imagine that plaintiffs' counsel would ask a paying client to compensate counsel for 35.94 hours to figure out how much the client owes." R. 74 at 12. And "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*." *Hensley*, 461 U.S. at 434. The Court therefore reduces this time to 3 hours (*i.e.*, $1,387.50, divided evenly between White's and Norman's hourly rates) as defendants suggest. R. 74 at 12.

The Court also agrees with defendants that the 34.3 hours White and Norman spent negotiating a fee-related settlement is excessive. Ozinga maintains that this expenditure was necessary because of defendants' low-ball settlement tactics. But the Court does not find evidence that defendants negotiated in bad faith. Indeed, Ozinga acknowledges (R. 82 at 22) that defendants made a final settlement offer amounting to a significant percentage of the $76,398.75 in fees

ultimately requested for the underlying litigation.[4] The Court agrees with defendants that Ozinga's counsel should be awarded 3 total hours ($1,387.50) for fee negotiations.

The final portion of the fees-on-fees request is for the 35.3 hours White and Norman spent drafting the fee petition and the 71.3 hours they spent on the fee petition reply (a total of 106.6 hours). Defendants point out that although Norman was brought into the case to provide expertise in fees litigation, he expended nearly as many hours as White on the fees litigation. The fact that White handled the underlying case by himself and brought in special fee counsel at a much higher billing rate for the specific purpose of the fee petition is clear evidence of "the tail wagging the dog." *Ustrak*, 851 F.2d at 987.

The Court therefore reduces the number of hours for Ozinga's fee petition and reply to 16 hours ($7,400), as suggested by defendants, which is in line with or more generous than reductions made by other courts for lack of proportionality. *See* R. 74 at 14 (defendants advocating that the Court award no "more than $7,400 for 16 hours for both plaintiffs' motion and forthcoming reply"); *see*, *e.g.*, *Spegon*, 175 F.3d at 554 (affirming district court's reduction for "hours spent on the fee petitions" from 9.2 hours to 1.6 hours); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir. 1999) (affirming district court's reduction of hours spent on fee motion from 9.9 hours to 1.6 hours); *Gibson*, 873 F. Supp. 2d at 992 (10 minutes to prepare fee

---

[4]    Defendants properly object to Ozinga's discussion of specific settlement offers under Fed. R. Evid. 408, and the Court does not disclose those specific numbers in its opinion.

petition for every hour on the merits was excessive; reducing request by half); *Mays*, 2014 WL 12730575, at *7 (100:1 ratio of work on merits compared to fee preparation reasonable); *Farmer*, 2015 WL 13310280, at *4 (awarding 13.7 hours of time spent on fee petition where plaintiffs requested 300).

In sum, the Court awards White and Norman 3 hours for compiling billing records, 3 hours for fees negotiations, and 16 hours for fee petition briefing. This adds up to 22 hours, which comes to $10,175 when divided equally between White's and Norman's billing rates as defendants suggest. The Court also awards White and Norman 6.6 hours ($3,385) for briefing and arguing a motion for extension of time to file the fee petition because defendants do not oppose that award. *See* R. 74 at 12 n.7. This results in a total award of $13,560 in fees-on-fees.

*     *     *

Combining the $76,398.75 awarded for the underlying litigation with the $13,560 awarded for the fee litigation, the total amount of the fee award is $89,958.75. This total is in line with awards made in similar cases. *See Hall*, 2016 WL 424965, at *6 (awarding $9,750 for preparing attorney's fees motion and $68,670 for the underlying merits in similar case challenging contraception mandate).

## Conclusion

For the foregoing reasons, the Court awards Ozinga's counsel a total of $89,958.75 in fees.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: May 22, 2018